UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RAMIREZ DEMARCO DEWBERRY,

        Plaintiff,

v.

UNKNOWN MCNEELY, et al.,

        Defendants.
_____/

Case No. 1:21-cv-774

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Correctional Officer Unknown McNeely, ICF

Health Unit Manager (HUM) Unknown Party #1, ICF Nurse Manager Unknown Party, Registered Nurse Amie J. Gaskill, Licensed Practical Nurse Joleane Tribble, Physician's Assistant David Hugye, and MDOC Regional Medical Officer Unknown Party #3.

Plaintiff alleges that on January 4, 2021, he began engaging in a hunger strike. (ECF No. 1, PageID.1.) The following day, Plaintiff gave a kite to Defendant McNeely, requesting that medical staff be notified of his hunger strike in accordance with MDOC policy. (*Id.*) According to Plaintiff, Defendant McNeely refused to give the kite to medical staff in violation of MDOC policy and procedure. (*Id.*, PageID.2.) Plaintiff tried to discuss the relevant policy and procedure with Defendant McNeely but claims that Defendant McNeely "persisted in his refusal to notify health care staff" about Plaintiff's hunger strike. (*Id.*)

On January 5, 2021, Plaintiff submitted an urgent health care request to Defendant Tribble, notifying her of the hunger strike. (*Id.*) Later that day, Defendant Tribble responded, "The HUM is notified and we will monitor you per policy." (*Id.*) Plaintiff alleges that contrary to this response, Defendant Tribble failed to perform the medical evaluations and monitoring required by MDOC policy. (*Id.*)

On January 7, 2021, Plaintiff submitted another health care request to Defendant Tribble, telling her that he had been on a hunger strike for 72 continuous hours. (*Id.*) She responded, "I have reported this to the HUM and we will continue to monitor you per policy." (*Id.*) Plaintiff alleges that Defendant Tribble failed to perform the medical evaluations and monitoring required. (*Id.*)

Plaintiff's hunger strike lasted from January 4, 2021, until January 19, 2021. (*Id.*, PageID.3.) He avers that during that time, ICF health care staff, including but not limited to the HUM, Nurse Supervisor, and Regional Medical Officer, failed to provide adequate health care.

(*Id.*) Plaintiff claims that the HUM should have notified the Regional Medical Officer about the strike 72 hours after being notified that Plaintiff was not consuming food and water and failed to do so. (*Id.*) Plaintiff claims further that Defendants Tribble and Gaskill were aware of his hunger strike and failed to conduct the medical monitoring required by MDOC policy. (*Id.*, PageID.3–4.) He claims that Defendant Gaskill did not perform the required medical evaluation until January 14, 2021, 9 days after receiving notification of Plaintiff's hunger strike. (*Id.*, PageID.4.) Plaintiff alleges further that the Regional Medical Officer failed to ensure that the required evaluations were performed on Plaintiff. (*Id.*)

Plaintiff also faults Defendant Huyge for not monitoring his condition until January 20, 2021. (*Id.*, PageID.5.) He alleges that he spoke to Defendant Huyge during medical rounds on January 14, 2021, and asked for the relevant monitoring and evaluations. (*Id.*) Defendant Huyge responded, "No, I don't look at that stuff." (*Id.*)

Based on the foregoing, Plaintiff asserts that Defendants violated his Eighth Amendment rights by demonstrating deliberate indifference to his medical needs. Plaintiff seeks punitive and nominal damages. (*Id.*, PageID.5.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

    **A.**    **Eighth Amendment Claims**

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148

4

F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial

5

risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff primarily contends that Defendants violated MDOC policy after he began his hunger strike and that their failure to follow policy violated his Eighth Amendment rights. Without more, however, imperfect compliance with MDOC policy shows, at most, negligence by Defendants, not deliberate indifference. *See Wilson v. Hofbauer*, 113 F. App'x 651, 653 (6th Cir. 2004) (citing *Hall v. Tyszkiewicz*, 28 F. App'x 493, 495–96 (6th Cir. 2002) (concluding that prison officials' imperfect enforcement of MDOC's non-smoking policy, without more, demonstrated, at most, negligence). Moreover, Plaintiff's broad assertion that Defendants demonstrated "deliberate indifference" does not support his conclusion; merely stating the "magic words" is not enough. *See Arnold v. South Carolina Dep't of Corr.*, 843 F. Supp. 110, 113 (D.S.C. 1994) (finding that, despite use of phrase "deliberate indifference" in his pleadings, inmate failed to show that defendants possessed the requisite mental state). Put simply, Plaintiff's conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

Plaintiff was required to support his Eighth Amendment claims with factual allegations, and the factual allegations in his complaint pertaining to the elements of deliberate indifference are scant. If Plaintiff's allegations that Defendants imperfectly complied with MDOC policy are stripped away, Plaintiff's relevant factual allegations merely assert that Defendants were aware that Plaintiff had begun a hunger strike. This allegation, however, does not allow the Court to fairly infer that Plaintiff was at a substantial risk of serious harm, much less that Defendants knowingly and recklessly disregarded that risk. "This is particularly true where, as is the case here, a prisoner alleges that multiple healthcare . . . professionals directly interacted with him during his hunger

6

strike and presumably could detect any substantial deterioration in his condition." *Davis v. Corizon*, No. 1:21-cv-213, 2021 WL 3928668, at *4 (W.D. Mich. Sept. 2, 2021). Nothing in Plaintiff's complaint permits the Court to infer that he suffered any detrimental effects from his hunger strike; accordingly, Plaintiff fails to state an Eighth Amendment claim against Defendants.

### B. Violations of MDOC Policy

To the extent that Plaintiff invokes MDOC policy as an independent ground for relief, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in a state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that Defendants violated prison policy, therefore, fail to raise a cognizable federal due process claim.

7

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   February 24, 2022                    /s/ Hala Y. Jarbou
                                              HALA Y. JARBOU
                                              UNITED STATES DISTRICT JUDGE